OPINION OF THE COURT
Richard F. Kuhnen, J.
*1064 Petitioner brings this CPLR article 78 proceeding to compel the City of Binghamton to issue to him a permit to do electrical work on premises at 53 Mary Street, Binghamton, New York, owned in part by him.
Respondents challenge the form of the proceeding because, although denominated a petition, the pleading served is in the form of an affidavit. The proceeding was initiated by an order to show cause instead of a notice of petition, in accordance with CPLR 304, 403 and 7804 (subd [c]). Jurisdiction having been obtained, the court will disregard the improper form, in accordance with CPLR 103 (subd [c]) and 2101 (subd [f]). Petitioner, who is not an attorney at law, is representing himself and some imperfections in form are to be expected. In the title to this proceeding, Douglas Ritter designates himself as “Petitioner”, as he does in Paragraph No. 1 of his paper which is verified in the manner of a petition rather than merely sworn to as in the case of an affidavit. The court therefore accepts the paper as a petition. To the extent that the decisions in Matter of Fitzgerald v Conway (191 Misc 1048), Matter of Weinraub v Gabel (41 Misc 2d 234), and Matter of Levine v Lending (176 Misc 462) may be contrary, the court declines to follow them, in the light of current more liberal attitudes of substance over form. See Matter of Crean v Bruckman (178 Misc 231), in which, in a CPLR article 78 proceeding where objections to the petition had not been raised by answer, but by affidavit, the court elected to treat the affidavit as in the nature of a cross motion for such relief.
The principal defense raised is that under the Electrical Code of the City of Binghamton a permit must be obtained prior to installing, altering, or repairing electrical wiring and that permits shall be issued only to licensed master electricians or to persons exempted from the license requirements under the code. Douglas Ritter is admittedly not a licensed master electrician. Nor, say respondents, does he fit into the category of persons exempted under section 7-41 (c) of the code which provides: “No license shall be required of any person engaged in the work of master electrician or journeyman electrician who is employed ex- *1065 elusively by one person, firm or corporation to make repairs in and about the permises of the said person, firm or corporation by whom he is regularly employed. (Gen. Ord. 1958, p. 100, §2).”
The permit requested by petitioner is not merely for repair of wiring but also for installation and alteration. Moreover, say respondents, the exemption is clearly intended for persons whose regular employment is to make repairs in and about the premises of one employer, in industrial rather than residential property.
The affidavit filed by Leonard Mellon, the Building Inspector of the City of Binghamton, states: “15. The exemption provided by Section 7-41 (c) did not apply to Mr. Ritter. This exemption applies only to persons making repairs to electrical wiring. Mr. Ritter did not intend to make repairs to electrical wiring. He intended to install a new electrical service at 53 Mary Street. In addition, the exception applies only to persons employed as ‘Master Electricians’ or ‘Journeymen Electricians’. Mr. Ritter is not employed as a Master Electrician or Journeyman Electrician. Moreover, this exemption is limited to work performed on industrial property and has never been interpreted to allow electrical work on residential property. The property at 53 Mary Street is residential in nature and, therefore,' does not fall within the exemption.”
Petitioner argues that he is fully qualified to do the work requested, that he recently installed a new service in property at 35 Crocker Avenue, Village of Johnson City, which he owns and that this was inspected and approved by the electrical inspector for the City of Binghamton, who also works for the New York Board of Fire Underwriters. He points out that “My place of employment is my rental property”, that the exemption statute is not in its wording limited to industrial property, and that he is “employed” although self-employed, in connection with it.
As we read section 7-41 (c) of the code, we do not find that it is limited to industrial property or solely to repairs of electrical equipment, as contended by respondents. Under the wording, a handyman employed by an estate or apartment complex “to make repairs in and about *1066 the premises” (any repairs) would seem to be entitled to the exemption from the license requirements and therefore entitled to a permit to do requested electrical work, not limited to repairing existing equipment. Violations of the code include penal provisions and it should therefore be strictly construed.
Although petitioner is not “employed exclusively by one person, firm, or corporation to make repairs in and about the premises of the said person, firm or corporation by whom he is regularly employed”, he is, as he points out, self-employed in the maintenance of the real properties he owns consisting of 36 apartments and from which he derives a meager financial return. We see no logic to deny an exemption to one who is self-employed rather than in the employ of another, but who does the same work in either case.
That the City of Binghamton has the authority under subdivision 27 of section 20 of the General City Law to regulate the performance of electrical work is beyond question (City of Syracuse v Penny, 59 Misc 2d 818). Nor do we question its power to regulate the issuance of electrical permits and licenses. What we do question is whether in the exercise of that authority and power it has validly denied petitioner a permit in contravention of its own regulations.
Nor do we question the constitutionality of such regulations in general (Matter of Spielvogel v Ford, 1 NY2d 558; City of Syracuse v Penny, 59 Misc 2d 818, supra). However, if the respondents’ interpretation of the exemption provision is correct, we do have serious doubts as to the reasonableness of the classification under the equal protection clause of the Fourteenth Amendment. We see no reason why an unlicensed repairman of electrical equipment in an industrial plant is a better insurer of public safety than an unlicensed repairman in a residential complex or why repair of electrical systems presents a lesser danger than alteration or installation. In fact, installation or alteration would seem to present a lesser danger as in such cases under section 7-7 (a) of the code no connection to a source of electrical energy can be made until a certificate of approval or permit has been issued.
*1067 Petitioner raises also a contention that the regulations create a monopoly and are in restraint of trade, a claim which the court rejects. (See People ex rel. Nechamcus v Warden of City Prison, 144 NY 529; Matter of Spielvogel v Ford, 1 NY2d 558, supra.)
Finally, respondents argue that “even if a clear legal right to the relief sought were shown, this court should, in the exercise of its discretion, deny the relief sought”. The dangers which electrical installations present is emphasized in an affidavit by the city fire marshal who states that: “On the basis of my experience in the field of fire prevention I strongly believe that limiting the performance of electrical work to licensed electricians greatly reduces the number of electrical fires in the City of Binghamton.”
The fire marshal’s belief may very well be correct, but the fact is that the city has not so limited its licenses. It is the exemption from such licenses, as interpreted by respondents, that petitioner is attacking as unreasonably and discriminatorily excluding him and the court agrees with petitioner in this respect.
If the City of Binghamton wishes to limit all electrical work to licensed electricians we see no constitutional reason why it may not do so within the limitations of subdivision 27 of section 20 of the General City Law. If it wishes to legislate exemptions from its licensing requirements it may also do so constitutionally if such exemptions have a reasonable and fair basis. In the opinion of the court the present exemption provisions, as interpreted by respondents, do not have such basis.
The prayer of the petition is therefore granted and respondents are directed to issue a permit to petitioner to do the work requested, subject to the required inspection and approval before connection.
No counsel fees are awarded to petitioner as no statutory or contractual authority therefor has been shown. In any event, petitioner acted as his own attorney and incurred no counsel fees.